### FRANK H. TYLER vs. NEW YORK AND NEW ENGLAND RAILROAD COMPANY.

Norfolk.  March 4. — May 10, 1884.  DEVENS & COLBURN, JJ., absent.

In an action against a railroad corporation for personal injuries occasioned to the plaintiff, a boy fourteen years old, the evidence tended to show that he, in company with another boy, was driving a horse attached to an open wagon, when it came into collision with the defendant's train at a grade crossing; that the street on which he was riding sloped downward through a cut for one hundred feet until it entered upon the railroad track; that, for a portion of this distance, the smoke-stack of an approaching engine could be seen through a picket fence, and, at a distance of from fifteen to thirty-five feet, a clear view of the track could be had; and that a train could be heard by a person in that street before it came in sight through the fence. The plaintiff testified that he drove into the street towards the railroad track on an easy trot; that, when he came to the crest of the hill, about one hundred feet from the track, he pulled up, and afterwards drove at a rate half-way between a trot and a walk; that the other boy pointed out to him a house, which had been hidden from their view by an intervening building until they were over the crest of the hill; that he looked at the house, and then turned to his horse; that the other boy called his attention to the train when he was within from ten to forty-six feet of the track, and he pulled up the horse, but, thinking he could not stop him, whipped him, drove across, and the wagon was struck on the hind wheel; and that there was nothing to prevent his hearing the train, except the rattle of the wagon. Both boys and another witness, who heard the train coming while sitting in a house near the track, with the windows shut, before the boys turned to look at the house above mentioned, testified that they did not remember hearing the bell on the engine ring. The engineer and the fireman testified that the bell did ring; but the whistle did not sound; and there was no flagman at the crossing at the time of the accident. *Held*, that the question whether the plaintiff exercised due care was for the jury.

TORT for personal injuries occasioned to the plaintiff by the negligence of the defendant. Trial in the Superior Court, before *Mason*, J., who allowed a bill of exceptions, in substance as follows:

There was evidence tending to show the following facts: The plaintiff was driving his father's horse and wagon on Bridge Street, in Hyde Park, on March 18, 1882, when it came into collision with a train of the defendant going towards Boston from Readville, where Bridge Street crosses the tracks of the defendant's railroad. The wagon was an ordinary open market wagon, and in the wagon were the plaintiff, a boy fourteen years and three months old, who had been used to horses, and driving

horses all his life, another boy whom he had just taken into the wagon, some empty baskets, and about thirty-two pounds of meat.

The public had been in the habit of crossing the track at Bridge Street for over twenty years, during which time it had been kept in repair by the defendant and its predecessor in title. Bridge Street is about two hundred feet long from Water Street to the tracks of the defendant corporation, and, at one hundred feet from the corner of Bridge Street and Water Street, it slopes downward through a cut, until it enters on the tracks of the railroad at the foot of the hill. The grade of Bridge Street, for the first fifty feet from the track, is twelve feet in a hundred, and, for the next fifty feet, seven feet in a hundred.

The foot of the slope along the railroad is ten feet, and the top of the slope fifteen feet, from the southerly rail of the inward track. The bank on the Readville side of Bridge Street increases from the height of seven and three quarters feet, at the corner of Bridge Street and the location of the railroad, to fifteen and a half feet, at two hundred and twenty feet from the centre of Bridge Street. On the top of the embankment for the first ninety feet was an unpainted picket fence about five feet high, and beyond that point was a tight board fence for about two hundred feet further. There was a signboard erected over the crossing in accordance with law, in plain view down Bridge Street, from the corner of Bridge Street and Water Street.

A person could see, through the picket fence along the top of the bank, the smoke-stack of an engine approaching from the direction of Readville, when the smoke-stack was two hundred and thirteen feet distant from the centre of Bridge Street, if he was standing in Bridge Street seventy-five feet distant from the tracks; and three hundred and forty-two feet, if he was fifty feet distant therefrom; and, at a distance of from fifteen to thirty-five feet, a clear view of the track toward Readville could be had. A train could be heard by a person in Bridge Street, before it came in sight through the fence.

The plaintiff testified that he drove into Bridge Street toward the tracks of the defendant's railroad on an easy trot; that, when he came to the crest of the hill, about one hundred feet

from the tracks, he pulled up, and afterwards drove the horse at a rate half-way between a trot and a walk; that the other boy told him he would show him where he lived, and, as they came in view of this other boy's home, the latter showed it to him; that this house lay on the Boston side of Bridge Street, and was hidden from view by an intervening house until the wagon was over the crest of the hill; that, when the house came in view, he looked at it, and then turned to his horse. He did not testify, nor did anybody else, that he looked for, listened for, or thought of, the train, or had the crossing in mind, except as might be inferred from the following testimony: The plaintiff testified that he "drove into Bridge Street, looked to the right first; there was a board fence; the other boy was at the left; looked towards Boston first; showed me his house as soon as I could see it; I then turned and tended to my horse; the other boy called my attention to the train." From the corner of Bridge Street and Water Street to within some thirty feet of the track, (which is nearer the track than the point where the other boy's house comes in view,) no train can be seen coming from the direction of Boston. The plaintiff also testified that, about a week after the accident, he went to the other boy's house, and asked the latter if the plaintiff stopped to listen for the train; and that there was nothing to prevent his hearing the train, except the rattle of the wagon. The two boys testified that they did not remember hearing the bell on the engine ring. They did not testify that the bell did not ring. The engineer and the fireman testified that the bell did ring. There was no other evidence on this question. The whistle did not sound. The plaintiff further testified that, when he was within about ten to forty-six feet of the track, the other boy called his attention to the train, and he pulled the horse up; but, thinking he could not stop him, he whipped him, drove across, and the wagon was struck on the hind wheel.

The evidence further tended to show that the train was heard coming by a woman, in a room in the second story of a house on the Boston side of Bridge Street, between Water Street and the track, with the windows shut, before the boys turned to look at the other boy's house; and she also testified that she did not remember hearing the bell ring.

It further appeared that there was no flagman at the crossing at the time of the accident; that the plaintiff had walked over the crossing twice, and driven over it once, before the accident, and had lived within less than half a mile of the crossing for a year; that, when he drove over the crossing before, about three months before the accident, the flagman of the defendant (with whom he was acquainted), who attended to the crossing at the Fairmount crossing (the other crossing of the defendant in Hyde Park), was attending to this crossing, because, as he judged, the Fairmount crossing was then closed. This was all the evidence in favor of the plaintiff, on the question whether he exercised due care.

The defendant requested the judge to rule that there was no evidence on which the jury could find that the plaintiff was in the exercise of due care.

The judge refused to rule as requested, but ruled that it was a question for the jury to decide, among other things, whether the plaintiff exercised due care ; and that, if the crossing was such as to require a flagman, it was the duty of the defendant, rather than of the town, to station one there, and, if it did not do so, it was guilty of negligence.

The jury returned a verdict for the plaintiff; and the defendant alleged exceptions.

*W. C. Loring*, for the defendant.

*J. E. Cotter*, for the plaintiff.

W. ALLEN, J.   The evidence discloses the circumstances of the collision, and shows that the plaintiff exercised some degree of care. He checked the speed of his horse at a distance of about one hundred feet from the railroad ; he looked to see if the track was clear; he saw the approaching train, and attempted to avoid it before he reached the track. Whether he exercised ordinary care was plainly a question for the jury, unless there was some undisputed fact so obviously inconsistent with ordinary care on his part that the court can say that no reasonable question was presented for the jury to pass upon. There are three circumstances which the defendant contends are, as matter of law, inconsistent with due care.

1. The plaintiff looked to see a house pointed out to him by his companion at the side of the street as they approached the

railroad. The house was hidden from their view by intervening buildings until they were over the brow of the hill, which was about one hundred feet from the track. The plaintiff testified that, when the house came into view, the other boy showed it to him; and that he looked at it, and turned to his horse. It does not appear that the plaintiff's attention was not continuously upon the crossing, nor that his perception of it was appreciably interrupted, nor that the approaching train could have been seen from the place where he then was, nor that the train was not seen as soon as it came in sight. The jury may well have found that the act was not negligent, and that it did not contribute to the injury.

2. The plaintiff was riding in a wagon, and did not stop his horse to listen for the cars. The defendant contends that this fact should, as matter of law, preclude the plaintiff from recovering in this action. The fact is not conclusive evidence of negligence; it was for the judgment of the jury, in connection with its circumstances.

3. The defendant relies upon the fact that, after the plaintiff was aware that the cars were coming, he did not stop his horse in time to avoid a collision. It is argued that, as the plaintiff knew he was about to cross a railroad, it was his duty to watch for cars, and to drive in such a manner that he could avoid a collision if a train appeared; that he had no right to go so near the track that he could not stop before reaching it, until he had assured himself that there was no danger. The true proposition is, that the plaintiff was bound to use reasonable care to avoid getting into a position in which he could not escape a collision. The fact that he did find himself in such a position is not conclusive evidence that he was there by his own negligence. He may have been there in consequence of the negligence of the defendant; and it may have been without the negligence of either party. Whether he was there in the exercise of due care must depend upon the evidence of care drawn from facts which must be found by the jury, and is, we think, in this case, a question for the jury. It is not contended that the plaintiff was in fault in not avoiding the cars after he perceived them. Whether he used due care to know if a train was coming, and to be in a condition to avoid it, were questions which depended

upon inferences from facts to be found by the jury. The age and experience of the plaintiff; the degree of watchfulness and care actually exhibited by him; the speed at which he was driving; his distance from the track when his attention was called to the cars, whether it was ten or forty-six feet; the obstructions to a view of the track on which the train was approaching; the negligence of the defendant as affecting the conduct of the plaintiff, whether it consisted in the absence of a flagman, or in not ringing the bell or sounding the whistle, or in the speed of the train, or in all combined, — were among the facts to be found by the jury, and from which, in connection with the particular facts and manner of the collision, they only could find the fact of due care or of negligence on the part of the plaintiff. The jury have found that the negligence of the defendant was the cause of the injury, and that there was no contributory negligence of the plaintiff; and we cannot see that that finding was not upon sufficient evidence. *Exceptions overruled.*