EMMA F. CLEAVES vs. PIGEON HILL GRANITE COMPANY.

Essex.   Nov. 1, 1887. — Jan. 6, 1888.   DEVENS & KNOWLTON, JJ.,
absent.

In an action for personal injuries sustained by the plaintiff, by reason of the car-
riage in which he was driving being struck by a car on the defendant's railroad
at a place where it crossed a way at grade, there was evidence that the car,
which was slowly descending an incline by the force of gravity, was in charge
of a brakeman, and could have been stopped in a short distance if the brake had
been applied.   There was also evidence that the plaintiff was driving at a mod-
erate trot; that, as he approached the crossing, his head was turned towards the
side from which the car was approaching; that the hind wheel of the carriage
alone was struck; that as the carriage approached the crossing it was visible
from the car; and that cars did not ordinarily run at that time.   The plain-
tiff was so injured that he was unable to give any account of the occurrence.
*Held*, that there was evidence proper to be submitted to the jury on the ques-
tions whether the plaintiff was in the exercise of due care, and whether the
defendant was negligent.

TORT, for personal injuries alleged to have been sustained by
the plaintiff, by reason of the carriage in which she was driving
being struck by a car on the defendant's railroad in Rockport,
at a place where the railroad crossed a private way at grade.
Trial in the Superior Court, before *Mason*, J., who allowed a
bill of exceptions, in substance as follows :

The plaintiff is the owner of a messuage bounding on a pri-
vate way over which she usually passed to and from her dwell-
ing-house to the public highway.   There was no question as to
the plaintiff's right over said private way.   She built her house
on the lot in 1878.

The defendant is the owner of a quarry a short distance above
said private way, and is the owner of land on both sides of said
private way from the main highway to the quarry.

In 1874, the defendant laid a tramway from this quarry over
its land, across said private way, to its wharf at tide water, and
has since conveyed stone in cars over the same from the quarry
to the wharf, where the stone is loaded into vessels.   The cars
descend from near the quarry to the wharf, on a down grade,
by their own momentum, the descent of the tramway both
above and below the crossing being so steep as to require the
constant application of brakes to control the car.   The cars are

controlled only by brakes, and only one car goes down at a time. The distance from the plaintiff's house to the tramway crossing on said private way is about seven hundred feet, and from said crossing to another private way, which passes the former at right angles and leads to the main highway, about three hundred feet.

The plaintiff introduced evidence tending to show that she had been in the habit of driving almost daily over this crossing, and on the day of the accident had passed over it a few hours before; that she had been in the habit of driving horses; that she had seen cars pass down over this crossing frequently during the day until six o'clock P. M., but had never seen them pass down after that time; and that she had no recollection whatever of the circumstances under which she was injured, and could not recall any circumstance connected with the affair. It was in evidence that plaintiff was unconscious for ten days after the injury.

There was evidence tending to show that the running of the defendant's cars after six o'clock P. M. was not a frequent occurrence; that a steam whistle on the defendant's works was blown at a quarter before six o'clock P. M., and was the usual signal for stopping the defendant's work; that the whistle had blown at the usual time on the day the plaintiff was injured; that the defendant had no flagman at this crossing, and had provided no means whatever to give notice to travellers upon the private way of the approach of a car; and that the plaintiff had never seen a flagman at the crossing. There was no evidence that she knew that any warning had ever been given of the approach of cars.

One O'Brine testified, for the plaintiff, that he was standing upon the highway about two hundred feet distant from the crossing; that he saw the car about a quarter past six in the afternoon coming down the track, and saw the plaintiff pass the barn of one Curtis, on the private way; that the car came down over the hill at the usual rate of speed, going about as fast as a man ordinarily walks; that nothing attracted his attention as to the speed at which the car was run; that he saw the plaintiff coming upon the crossing; that the horse was going at a good trot, nothing out of the way at all; that, as the plaintiff crossed, the car struck the hind wheel of the buggy, knocked it around, and

the buggy went along on one side to the culvert, before it tipped over and the plaintiff was thrown out; that the car was loaded with stone; that he saw the brakeman on the car, but did not see him do anything; and that he could not tell how the plaintiff was sitting in her carriage; but thought she was looking straight ahead, going on about her business.

Upon cross-examination, the witness testified that just after the accident he had told a person that he thought the car struck the buggy, but that he would not swear to it.

Annie Ahearn testified that she saw the plaintiff turn into the private way some eight hundred feet distant from where the witness stood, and drive along to Curtis's barn; that the plaintiff was sitting in her carriage, and was looking towards the left, and in the direction the car was approaching; and that she did not see the plaintiff after she passed Curtis's barn.

One Dolliff testified that she saw the plaintiff pass said Dolliff's house, sitting in an open buggy, on the right side of the buggy; that the horse was going at a slow trot; that the plaintiff was holding the reins in her hands, also the whip; that the witness observed the plaintiff a short distance past Curtis's barn; that the plaintiff's head was turned towards the trees on the corner to the left where the track comes down; that the witness was sitting at an open window in her house; that her attention was withdrawn for a moment while the plaintiff was near Curtis's barn; that, on hearing the sound of the car, the witness looked again, and saw that the plaintiff's carriage had just passed across the last rail of the tramway, and seemed to be out of the road and tipped on one side, and it went along until she was thrown out near the stone wall; that the witness did not see the car at all, but before she looked out of the window the second time she heard an unusual noise of the car, but could not say whether it was above or below the crossing; and that she had seen the plaintiff often drive over this road.

The evidence of both the plaintiff and the defendant was, that the defendant's car did not stop at all, from the time O'Brine saw it coming down above the crossing, until it had passed over the crossing and had reached the defendant's wharf.

The plaintiff also introduced evidence, upon the question of a collision having taken place between the buggy and the car,

of the condition of the left hind wheel of the plaintiff's buggy, to the effect that there was a cut on the tire of the wheel; that the spokes were started in the hub, and the axle was sprung. This evidence was by witnesses who examined it afterwards.

Arthur M. Waite testified that he had examined the defendant's cars, and the brakes attached to them; that the brakes were not sufficient to stop a car quickly, if going as fast as a man could walk; that they would not stop it within ten or fifteen feet, and that the brake would not stop the car quickly if it was going but little faster than a man could walk, and was loaded and moving down the hill.

The foregoing was all the evidence for the plaintiff upon the question of due care on her part, and negligence on the part of the defendant. The defendant asked the judge to rule that there was no evidence to go to the jury which would entitle the plaintiff to recover. The judge declined so to rule.

The defendant offered evidence in rebuttal of Waite, to the effect that the cars had been stopped, when going as Waite described, within five feet.

One Knights testified, for the defendant, that he was in charge of the car as brakeman at the time of the accident; that he saw the plaintiff first as she came on to the crossing by the trees, the car being about sixty feet from the private way as the horse's head came in sight on the track; that the horse was going a fair trot at the time; that the car was moving as fast as a man ordinarily walks; that he turned the brake to slow up the car, as the plaintiff went over the crossing; that the plaintiff passed over the track and went as far as the culvert, when she went out of her carriage about thirty feet from the track; that the car was twenty-five or thirty feet from the crossing when the plaintiff went out of her carriage; that the car did not strike her carriage nor come within twenty-five feet of it; that he had run cars ten to eleven years, about twenty a day on an average; that he had run cars when they had vessels to load as late as eight o'clock P. M., and that the time for the whistle to blow was a quarter to six o'clock P. M.

Upon cross-examination, the witness was asked if he did not tell Mrs. Brown that he did not think the car struck the plaintiff's

carriage, but he could not tell; to which he replied that he did not.

One Parker testified that, from his chamber window on the highway, he saw the plaintiff pass from Curtis's barn over the crossing towards the culvert, going a good fair gait; that she crossed the track before the car came to the crossing; that the car was thirty feet above the crossing after she passed; that the car did not touch the carriage; and that the whistle was blown at a quarter before six o'clock, but cars ran after that time when there was a vessel to load.

One Cunningham testified that at the time of the accident he was on the main highway as flagman; that he saw the plaintiff come past Curtis's barn, and observed her till she crossed the track and was thrown out at the bridge or culvert; that her horse was going a fair jog; and that when she crossed the track the car was from twenty to twenty-five feet up the track, and did not come in contact with the plaintiff's carriage.

Upon cross-examination, the witness testified that O'Brine, who stood near him at the time of the accident, called at the stable one evening thereafter, and had a discussion with him as to whether the car struck the plaintiff's carriage; O'Brine contending that it did, and he, the witness, that it did not; and that, upon the third evening after the accident, in consequence of the talk with O'Brine, the witness went to the plaintiff's stable to examine the carriage to satisfy himself.

Upon direct examination the witness testified that he did not find any mark on the nigh hind wheel, but found a scratch on the off hind wheel.

The defendant offered evidence tending to show that the stones covering the culvert were elevated above the roadway.

One Botanico testified that he saw the plaintiff turn into the private way, going towards the railroad crossing; that he, with a friend, was going home, and just as he came upon the private way he saw the plaintiff thrown out of her carriage at the culvert; that he ran towards the plaintiff, and when he came near Curtis's barn, the car passed down across the private way; that he had not seen the car before; that he knew the brakeman by sight; and that he went over to where the plaintiff was, with his companion Tocchi.

Tocchi testified to the same facts sworn to by Botanico.

Mrs. Brown testified, in rebuttal, that Knights, the brakeman, told her he thought the car did not strike the plaintiff's carriage, but that he could not tell.

This, with a description of the locality at the time of the accident, was all the testimony bearing upon the question of negligence of the defendants, and due care on the part of the plaintiff, at the time of the accident.

The defendant requested the judge to give to the jury the following instructions, among others: " 1. There is no evidence which would warrant the jury in finding a verdict for the plaintiff. . . . . 8. Upon the whole testimony in the case, there is no evidence of due care on the part of the plaintiff, and negligence on the part of the defendant, which would justify a verdict for the plaintiff. . . . . 16. Negligence cannot be inferred from the happening of the accident to the plaintiff; and, upon the whole of the plaintiff's evidence, the jury would not be warranted in finding that the defendant was guilty of negligence."

The judge refused to give the first and eighth instructions requested. The first part of the sixteenth request was given, and the last part, namely, " and, upon the whole of the plaintiff's evidence, the jury would not be warranted in finding that the defendant was guilty of negligence," was refused.

The judge gave general instructions to the jury, to which no exception was taken.

The jury found specially, in answer to questions submitted to them, that there was a collision between the defendant's car and the carriage in which the plaintiff was riding, and that said collision was occasioned by the negligence of the defendant, and returned a general verdict for the plaintiff in the sum of $5500. The defendant alleged exceptions to the refusal to give the instructions above set forth.

*N. Morse & C. Sewall*, for the defendant.

*H. P. Moulton*, (*H. N. Woods* with him,) for the plaintiff.

W. ALLEN, J. There was evidence that the plaintiff was driving at a moderate trot, and that the defendant's car was going about as fast as a man ordinarily walks; that the car was moved by gravity only, and could be stopped by the brake in going a distance of five feet, according to the evidence for the

defendant, and of ten to fifteen feet, according to the evidence for the plaintiff; that the plaintiff's horse and carriage had crossed the track in front of the approaching car so far that the hind wheel was struck by the car, in such a manner that the carriage was not prevented from going along twenty or twenty-five feet in the road before the plaintiff was thrown out. The jury may well have found that the speed of the car was not slackened. The brakeman upon the car testified that he saw the plaintiff's horse as soon as it appeared upon the track, and that the car was then sixty feet from the crossing; that he turned the brake to slacken the speed of the car, and that the car at no time was within twenty-five feet of the plaintiff's carriage. Several witnesses testified that they saw the car at the crossing, and before it reached it, but no one testified that there was any diminution in its speed; one said that he saw the brakeman, and did not notice that he did anything. The jury may well have found that the speed of the car was not checked, and that, if the brake had been applied when the plaintiff's horse first went upon the track in sight of any person upon the car, the collision would have been prevented; and that, whether the collision was without the knowledge of the brakeman, or whether he falsified in his testimony in regard to it, it was caused by his negligence.

The plaintiff, according to the evidence, was so injured that she had no recollection of anything connected with the accident, and could not give testimony as to her care at the time. It was in evidence that she was accustomed almost daily to drive over this crossing. Several witnesses who saw her before she reached the crossing testified to the manner in which she was driving. Four witnesses testified that they saw the plaintiff drive over the crossing. They described her manner of driving as fully as the parties asked them to, and it was for the jury to say whether she was driving in an ordinary way and with ordinary care, unless some fact appeared which showed, as matter of law, that she was negligent. Unless there was some such fact, the question was plainly for the jury.

Three of these witnesses testified that, when the plaintiff drove over the crossing, the car was twenty-five or thirty feet from her, and their testimony alone would justify no inference but that she was in the exercise of ordinary care. It is true that the jury

found that these witnesses were wrong as to the position of the car, but they were called by the defendant, and they did not testify to anything in the plaintiff inconsistent with ordinary care. The other witness, the only one of the four called by the plaintiff, also testified to a fact which the jury found to be true, and which the defendant claims was in law negligence, and took the question of due care from the jury, that the car struck the hind wheel of the plaintiff's carriage. However strong evidence of negligence in the plaintiff this may have been, it clearly was not conclusive. Even in the case of a steam railway, the fact of a collision at a crossing between the engine and a traveller has never been deemed conclusive evidence that the traveller was wanting in due care. See *Tyler* v. *New York & New England Railroad*, 137 Mass. 238. There was evidence that it was unusual for cars to pass at that hour, and that the plaintiff had no reason to expect one; there was evidence that the plaintiff was looking in the direction from which the car was coming. There was no evidence that the car could be seen by her until she herself came upon the track, while there was evidence that her horse could be seen from the car before she or her carriage reached the track; and if she had seen the car, and attempted, of choice, to pass before it, it would be a question for the jury whether the act was negligent. The car was moving slowly, and was easily controlled, in these respects resembling an ordinary carriage more than a locomotive engine. The plaintiff had a right to expect that it would do something towards avoiding a collision, and, while that would not justify the plaintiff in putting herself in a dangerous position, it might be an element in determining whether a certain position would be dangerous, just as the fact that a horse is under its driver's control is an element in determining whether it is dangerous to pass in front of it. A driver who at a crossing of streets sees that he apparently can go safely before a horse and carriage approaching on a cross street is not, as matter of law, obliged to stop and wait for the other to pass, unless he is certain that he has made no mistake in his estimate of speed and distance; he may have a right to pass in front, and to assume that, if necessary, the speed of the other will be checked. So, in this case, the fact that the speed of the car could be checked, if there should prove to be danger that it

would run into the plaintiff's carriage, was a fact proper to be considered by the jury in determining whether the plaintiff was negligent in making a slight miscalculation, which could be remedied by proper management of the car.

We think that the question whether the plaintiff was in the exercise of due care was for the jury, and that the rulings excepted to were correct. *Exceptions overruled.*