CRAWFORD v. MICHIGAN CENTRAL RAILROAD CO.

RAILROADS—PEDESTRIANS—PERSONAL INJURIES—NEGLIGENCE—CON-
TRIBUTORY NEGLIGENCE—QUESTION FOR JURY.

In an action against a railroad company for personal in-
juries caused, by plaintiff's being struck by defendant's
train while backing over a street crossing, where the
evidence as to defendant's negligence and plaintiff's con-
tributory negligence was very conflicting, the issue was
for the jury, under proper instructions.

Error to Kalamazoo; Weimer, J.   Submitted June
5, 1919.   (Docket No. 65.)   Decided July 17, 1919.

Case by William Crawford against the Michigan
Central Railroad Company for personal injuries.
Judgment for plaintiff.   Defendant brings error.   Af-
firmed.

*Stewart & Stewart* (*Victor M. Gore,* of counsel),
for appellant.

*Claude S. Carney,* for appellee.

MOORE, J.   Plaintiff was struck by one of defend-
ant's trains at the North West street crossing in the
city of Kalamazoo, on the 15th day of April, 1916.
His leg was severed below the knee.   At a trial of the
cause a jury returned a verdict in his favor for $5,000.
The case is brought here by writ of error.

An order of the Michigan railroad commission re-
quired the gates at this crossing to be operated 24
hours of each day.   The train which caused the injury
consisted of a tender and locomotive which were run-
ning backwards, pulling a train of cars.   A tower was
located some distance west of this crossing, from
which tower the gates maintained at the North West

street crossing and the Kalamazoo avenue crossing were operated.

The general charge of the trial judge to the jury covers nearly 19 pages of the printed record. We quote from it sufficiently to indicate the questions involved:

"The burden is upon the plaintiff to establish by such preponderance of the evidence, the greater weight of the evidence: *First,* the negligence of the defendant. *Second,* that that negligence was the proximate cause of the accident. *Third,* that the plaintiff himself was free from contributory negligence, that is, free from an ordinary want of care and caution, on his part, which contributed to the accident. Just as the defendant was required in the premises to exercise ordinary care and caution, that degree of care and caution which I have just described to you, so on the other hand, the plaintiff, for his own safety, is required by the law to exert the same degree of care and caution, namely, that which an ordinarily prudent man would exercise under the same or similar circumstances. * * *

"A little further with reference to the question of contributory negligence. It may be defined as some act or omission by a person injured which an ordinarily prudent man would not have done or would not have left undone under the same circumstances, which directly aided in causing or contributing to the injury. The rule of prudence binding on any person in any circumstances must be that which under just such circumstances would restrain a man of ordinary prudence. If the mind of an ordinarily prudent man would be impressed with a belief of danger he has no right to incur that danger. If the danger would not be apparent he is not negligent in acting upon that assumption.

"Every person is supposed to use his senses of sight and hearing in self-protection, whenever and wherever there may be reasonable cause to apprehend danger. Absent mindedness of a person injured is no excuse for going into danger. Every person must use ordinary care to protect himself, and if he neglects

such duty he cannot claim damages for an injury happening or in part happening from a neglect of his duty.  *   *   *

"It is the theory and claim of the plaintiff in this case that the defendant was guilty of negligence in several respects, namely:

"1. That defendant failed to give warning of the approaching train either by lowering the gates timely or by blowing the whistle from the engine or ringing the bell.

"2. That the defendant carelessly obstructed the view of the main line to the east (that is east of West street) by a number of freight cars on the siding.

"3. That the defendant operated the train which struck the plaintiff at a greater speed, an unreasonable, imprudent and careless rate of speed, particularly at a rate of speed greater than ten miles an hour, in violation of the ordinance of the city of Kalamazoo.

"4. That the defendant failed to lower the gates one minute before the train passed the crossing in violation of the ordinance of the city of Kalamazoo.

"It is the claim of the plaintiff that such negligence or some of it, was the proximate cause of the accident and of his injuries.  That he himself was free from negligence, contributing to the injury; that he looked as he approached the crossing and observed that the gates were up and proceeded on the sidewalk, or the sidewalk line, on the west side of West street, and that he saw some freight cars on the siding and that his view of the main track was obscured by them, so that he did not and could not see the moving train approaching.

"It is his claim that he was upon the highway, that is, within the confines of the highway; by that I mean, he was between the sidewalk lines.  It is claimed he was on the sidewalk or where the sidewalk would be if there was a sidewalk.  In other words, that he was where he had a right to be; that he was in the public highway; that he was not outside of the highway line, that is, he was not upon the defendant's property, to the west of the highway, when he was struck.  *   *   *

"It is the claim of the defendant:

207—Mich.—11.

"1. That the gates were lowered properly and timely. At such time as was reasonably necessary under all the circumstances to give sufficient warning to the public to protect the public.

"2. That warning was given by the bell, that the bell was rung, as required, that is continuously as it approached the crossing until after the train passed the crossing.

"It is not claimed that the whistle was sounded, but it is claimed that there was no requirement, and that is true. * * * Its failure to sound the whistle would not as a matter of law constitute negligence on its part, so you will disregard the question of the whistle.

"It is the theory and claim of the defendant that the bell was rung continuously as it approached and passed the crossing.

"3. That there were no cars standing upon the siding to obstruct the view. Perhaps that might be stated another way, at any rate, the cars if there were any, did not obstruct the view. * * *

"It is the theory and claim of the defendant that the speed of the moving train was not excessive or unlawful or careless or negligent, or an imprudent speed, that it was a moderate, prudent, careful speed that was being maintained. That the train was just starting, just getting under way, that it had shortly before that come to a full stop and was then starting.

"It is the theory and claim of the defendant that the plaintiff was not upon the highway, that he was as a matter of fact on the contrary on the defendant's right of way, on its private property, in other words, that he was a trespasser and that the defendant owed him no duty, that is, not such a duty as would entitle him to recover in this case. I will explain the duty in a moment, that railroads owe to trespassers; but that is not the duty that is claimed to have existed in this case.

"For the purposes of this case if you find that the plaintiff was on the defendant's right of way when he was struck he would not be entitled to recover.

"It is the claim of the defendant that the plaintiff's injuries were not caused or sustained by reason of any negligence on its part, but on the contrary, by

reason of his own negligence. That the plaintiff was not upon the sidewalk but upon the right of way of the defendant railroad company, and that there was a clear view of the main track to the east, and that if the plaintiff had looked he must have seen the train moving.

"It is the theory and claim of the defendant if he did not see the train it was because he did not look; that that is a physical fact from the evidence, that it was where he could see it if he had looked, that in short, the plaintiff did not exercise that degree of care for his own safety that men of ordinary prudence would have exercised under the same or similar circumstances, and that his failure to do so contributed to produce his injury. Those are the two theories and claims as I understand them substantially as made by the pleadings and the testimony.

"The defendant railroad company owed a duty to the public to lower the gates at that crossing timely upon the approach of trains, and failure to do so would as a matter of law, constitute negligence on the part of the defendant.

"It was the duty of the defendant company to lower its gates upon the approach of trains at such time as would be fairly and reasonably necessary to protect the public, to give warning to the public and persons about to cross the right of way; not at any particular time or any particular moment, but at such time as under all the circumstances in this case would be a timely lowering, not necessarily ten minutes, or five minutes, or three minutes, nor one minute, notwithstanding there is an ordinance to that effect. You must take into consideration the ordinance; the ordinance requires one minute. It is for the jury to say whether or not the ordinance is reasonable, if it is valid, and it is reasonable and valid it may then be considered by you as evidence of negligence if valid. A violation of it does not necessarily constitute negligence on the part of the company.  *  *  *

"It was the duty of the defendant company, its employees and agents upon the train to ring or cause the bell to be rung and to be rung continuously on approaching and passing the crossing, and its failure to do so would constitute negligence, because it is re-

quired by State law; the lowering of the gates is required by State law. For that reason as I have already stated to you, failure to lower them timely would constitute negligence. It would not necessarily follow that that negligence caused the injury, but it would be negligence, and it is for you to say whether or not that was the proximate cause of the injury or whether something else was.   *   *   *

"It is claimed as we have noted, that the plaintiff was a trespasser. If he was the defendant owed him no duty while he was on its private right of way except not to wantonly or wilfully injure him after discovering he was in a place of danger, if it was so discovered.   *   *   *

"So, as I have already stated to you, under the evidence in this case, under the theory upon which the case has been tried, and under the evidence that has been offered to support the theories of the plaintiff, if the plaintiff was not on the public highway, was not within the limits of North West street, if, on the contrary he was west of the sidewalk line, was on the Michigan Central private right of way, he cannot recover.   *   *   *

"It is incumbent upon the plaintiff to show and he must show to your satisfaction by a preponderance of the evidence that the defendant not only carelessly and negligently obstructed the view of the plaintiff when he was crossing the defendant's tracks by causing a number of freight cars to be and remain standing on the sidetrack or sidetracks so he could not see the train approaching, but he must also show it was through such negligence in placing such freight cars that he was injured, as he alleges on the sidewalk within the limits east and west of North West street, without contributing to the injury himself.

"The plaintiff in order to recover, must also show not only that the defendant did not lower the gates on the approach of the train in question, but that it was because of the failure of the defendant to lower the gates seasonably and timely that he became injured, without negligence on his part contributing to it. If the plaintiff suffered an injury on defendant's grounds then in that case it is of no consequence whether the gates were up or down.   *   *   *

"It was the duty of the plaintiff as I have already stated to you in a general way, to use that degree of care and caution for his own safety, as men of ordinary prudence would have used in the same or similar circumstances. To use his senses of sight and hearing. Not only to use his senses of sight and hearing at the time he was outside of the gates, before he used the gates but afterwards. There was more than one track, there were several tracks, and after he proceeded across the tracks it was still his duty to use his senses of sight and hearing in the same manner and to the same extent as men of ordinary prudence under the same or similar circumstances would do. A railroad track is in itself a warning of danger and any pedestrian about to go upon it should look and listen before attempting to cross, and a failure to do so is negligence. So strongly has this rule been enforced that even where there is a clear view of the track for only a very short distance and the approach of trains could have been seen by stopping, looking and listening before crossing the track, a traveler in the highway has been held guilty of contributory negligence as a matter of law when injured in such a case, unless of course, he was misled by the flagmen or the acts of the trainmen on the train or gates.

"Where gates or a flagman are maintained the public have a right to presume that they will perform their duty. A traveler is not then required to stop, look and listen before crossing the track. When the gates are up it is usually, as in this case, a question for the jury to determine whether or not under all the facts and circumstances the pedestrian was deceived in assuming that the way was safe. Of course, a man may not rely upon the gates if he has knowledge of the train; if he in fact knows that a train is moving on the track he is not then deceived in relying upon the gates; but in the absence of notice to the contrary, where there is a regular gateman, or where there is a regular flagman or gates ordinarily operated, usually and customarily operated, as in this case, it is for the jury to say in what manner and to what extent the traveler is deceived in relying upon those gates, whether under the particular and peculiar circumstances of the case under consideration he is deceived. Whether

or not he was negligent depends in a measure upon whether or not he had a right to rely under the circumstances upon the position of the gates and whether or not he did in fact rely upon that. It is not the law of this State that under all circumstances it is absolutely necessary for a person approaching a railroad crossing to look both ways and listen for approaching trains. It is generally required. That is the general rule as I have already stated to you. If there were no gates at all at this crossing then that rule would apply; but in cases where there are gates or where there is a flagman, that rule does not always apply. As I stated to you, it is generally required but it is not a rule of universal application. Every case must depend upon its own circumstances. A traveler in every case is only required to take such precautions as an ordinarily prudent man would under like circumstances, and whether or not he did use such care is generally, as in this case, a question for the jury.

\* \* \*

"It is for you as jurors to say whether or not under the circumstances the plaintiff had a right to rely, and if he had such right then in fact how far did he rely upon the position of the gates, or any signal of danger performed as an assurance of safety. If an ordinarily prudent man would have done the same as the plaintiff did under the circumstances and you find that the defendant was guilty of negligence causing his injury, then of course he should recover.

"If you find that the plaintiff as I have just stated to you had the right to rely and did in fact rely upon the position of the gates, that is, that they were up, before and at the time of entering upon the northermost track then, in order for the plaintiff to recover you must also find that he crossed in a southerly direction towards the main track—west bound track— and that his view of the approaching train was obscured by the freight cars, for the reason that although he in the first instance, upon approaching the first track to the north, might have been and was deceived in relying and did in fact rely, upon the position of the gates, namely, that they were up, still, if as he proceeded to the south towards the main line his view of the approaching train was not obscured

by standing cars, and there was nothing to prevent him from seeing the train had he looked as he traversed the distance from the north track to the main track, he would be guilty of contributory negligence as a matter of law in failing to see the train in time to avoid the accident.

"Perhaps that should be stated in this way:  If those freight cars were not standing there, as he claims, on that siding then, although the gates were up when he crossed, although you find they should have been down, they were up, still he would be guilty of contributory negligence for as he passed from the north track he failed to see the approaching train."

There are several assignments of error but the contention of appellant which is important is tersely stated by counsel in the supplemental brief as follows:

"Crawford's own story proves him guilty of contributory negligence:

*"First.* The record shows that he exercised no care whatever for his own safety; and that if he had, he would have escaped injury.

*"Second.* The entire absence of care or attention by plaintiff renders the issue one of law, as the claim that the gates were up cannot and does not excuse contributory negligence.

"We submit it must be held in this case, as a matter of law, that the neglect of plaintiff to observe that active watchfulness which ordinarily prudent men would exercise under like circumstances bars his recovery.  The question was, therefore, not one for the jury.  The evidence leaves no doubt or room for doubt, that if Crawford had made any use of his senses he could have both seen and heard in due season 'the approaching train.'  *Blount* v. *Railway Co.*, 61 Fed. 375.

"It cannot be stated too often that the plaintiff was a pedestrian, having quick control of his own movements, whose casual use of his senses afforded complete assurance of his personal safety.  In order even to avoid seeing this train coming across this wide street, it was necessary for plaintiff to have his eyes riveted on his toes or else his back toward the train; either attitude was negligent."  Citing *Detroit Southern R. Co.* v. *Lambert,* 150 Fed. 559, and other cases.

A reference to *Blount* v. *Railway Co., supra,* will show that it is not controlling. In that case Mr. Blount had he looked could have seen an approaching train from the porch where he was visiting, and all the way from the time he left the porch until he was finally struck.

Judge Taft speaking for the court said:

"In this case Blount had stood at Hoy's porch where he could see the track for 800 feet. From Hoy's gate for 60 feet he walked towards the track, while the train was in full view but 300 feet away, and was getting nearer and nearer each second. As the train passed the ice house at a speed of 15 miles an hour, its roar must have been heard by any one giving the slightest attention, who was not 100 feet away. When he was 6 feet from the track, the train was only 30 feet from him and in full sight, and yet he did not halt or hesitate but rashly stepped in front of it. It was a quiet night. There was no confusion at the crossing. There were no other trains in sight. There was nothing to distract Blount's attention from the oncoming train except a self-absorption which in approaching a railway crossing is gross negligence. On these facts can reasonable men fairly reach any other conclusion than that Blount was wanting in due care in not observing his danger?

"We have no wish, in expressing this conclusion, to weaken at all the obligation upon the railway company to lower its gates when trains pass, and we freely concede that such a failure is to be regarded as an invitation to the traveler to cross the track in safety. *Northeastern R. Co.* v. *Wanless,* L. R. 7 H. L. 12-15. The extent to which the traveler may rely on such an invitation, and omit the ordinary precautions of looking and listening is usually a question for the jury. This case, however, we think to be exceptional in its facts which permit only one inference."

In the instant case it was claimed and there was testimony to sustain the claim that plaintiff's view was cut off by cars on the sidings until he got nearly upon the main track.

The question involved is not a new one in this State. In *Richmond* v. *Railway Co.*, 87 Mich. 374, Justice MORSE, in speaking for the court, said in part:

"We do not think from the testimony produced by the plaintiff that Sherwood could have seen the cars approaching from the south, after he left the crossing of the Lake Shore & Michigan Southern Railway, until he came within about 20 feet of the crossing. If he had looked then, he would have undoubtedly seen these cars in time to have stopped and avoided a collision. And it is pretty apparent—almost absolutely certain from the plaintiff's own showing—that he did not look south within said 20 feet, until his horse was upon the track.

"Whether he was negligent depends in a great measure upon whether or not he had a right to rely, under the circumstances, upon the absence of the flagman, and the lack of any signal of danger from him.

"It is claimed by defendant's counsel that the obstruction of the view to the south, and the absence of the watchman from his post called upon Sherwood to have stopped, and looked and listened before he attempted to pass this crossing. This claim would be correct if at this street crossing no flagman had been stationed to give warning. But the testimony shows that a flagman had been kept at this point for three or four years, whose duty it was to signal by a flag in the street the approach of trains. It is not the law of this State that under all circumstances, it is absolutely necessary for a person approaching a railroad crossing to look both ways and to listen for approaching trains. It is generally required, but it is not a rule of universal application. Every case must depend upon its own circumstances, and it would be unreasonable to apply such rule, under all circumstances, without regard to the condition of things at the time. *Cooper* v. *Railway Co.*, 66 Mich. 266. Nor is a traveler compelled, under all circumstances to stop before crossing, if his view is obstructed from one way. He is only required to take such precaution as an ordinarily prudent man would under like circumstances, and whether or not he did use such care is generally a question for the jury. See *Guggenheim* v. *Railway Co.*, 66 Mich. 157, 158, and cases cited.

"Plaintiff's counsel contend that, it appearing that the defendant had stationed a flagman at this crossing, whose duty it was to warn parties about to cross of approaching trains, it was for the jury to say whether the deceased, in keeping his eyes directed to the flagman for the very purpose of observing a signal at the earliest moment that it could be given, was not exercising due care. They cite the following cases in support of this contention: *French* v. *Railroad,* 116 Mass. 537; *Sweeny* v. *Railroad Co.,* 10 Allen (Mass.), 377; *Chicago, etc., R. Co.* v. *Hutchinson,* 120 Ill. 592 (11 N. E. 856); *Pennsylvania Co.* v. *Stegemeier,* 118 Ind. 305 (20 N. E, 843); *Glushing* v. *Sharp,* 96 N. Y. 676; *Cleveland, etc., R. Co.* v. *Schneider,* 45 Ohio St. 678 (17 N. E. 321); *State* v. *Railroad Co.,* 80 Me. 444 (15 Atl. 39); *Central Trust Co.* v. *Railway Co.,* 27 Fed. 159; *Tyler* v. *Railroad Co.,* 137 Mass. 238; *Pittsburgh, etc., R. Co.* v. *Yundt,* 78 Ind. 373. * * *

"The defendant asked the court to instruct the jury in substance, that the absence of the flagman from his post did not in the least excuse Sherwood from exercising his senses of sight and hearing to ascertain whether the train was approaching; and that, if the deceased Sherwood, by looking up the track in the direction of the approaching train, could have seen it in time to avoid the injury, his omission to do so was such negligence as would prevent plaintiff's recovery. This was refused, and it will be seen that the court left it to the jury to determine whether, under the circumstances, Sherwood had a right to rely and how far, upon the absence of the flagman from his post of duty, and the want of any signal of danger from such watchman, as an assurance of safety; and they were instructed that, if an ordinarily prudent man would have done the same as Sherwood did under the same circumstances the plaintiff could recover. I find no errors in the charge on the subject of negligence."

In *Tobias* v. *Railroad Co.,* 103 Mich. 330, it was said:

"With these facts appearing plainly upon this record it is evident that the deceased, if he had looked,

might have seen the train in time to avoid the accident, and the fact that he drove upon the track would be conclusive evidence that he did not look; and the court should have directed the verdict in favor of the defendant, but for the question of the maintenance of an electric bell there.  The court was expressly asked to charge upon this point, by the plaintiff's third request, that if the deceased did not know of any fault in the condition of the bell,. this fact might be taken into consideration, with other facts in the case, as bearing upon the question of deceased's contributory negligence.  This request should have been given.  It cannot be said that the deceased would have no right to rely upon the ringing of this electric bell to warn him of the approach of the train.  If the electric bell had rung, it would have given him warning.  That he expected it to ring might make .him less cautious in looking for the coming of a train.  The case is somewhat similar in principle to *Richmond* v. *Railway Co.*, 87 Mich. 374.  In that case it was said substantially that it was almost absolutely certain, from plaintiff's own showing, that he did not look south when within 20 feet of the tracks, and that whether he was negligent depended in a great measure upon whether or not he had a right to rely, under the circumstances, upon the absence of the flagman, and the lack of any signal of danger from him.  The cases upon that question are collected, and upon the whole case it was held that the circumstances were such that it became a question for the jury whether the plaintiff was guilty of contributory negligence.  So we think in this case that under proper instructions from the court, that question should go to the jury, in connection with plaintiff's third request, which should have been given."

In the recent case of *Coston* v. *Railroad Co.*, 201 Mich. at page 241, it is said:

"This intersection of the railways was on the main thoroughfare between Owosso and Corunna, the county seat of the county in which both were located.  Defendant's line approached it from the south on a curve and crossed it diagonally; it was within the power of the railroad commission to make this order, and

when the system was installed with an alarm bell to give warning of an approaching train which all approaching the crossing could hear, it cannot be said that it was not intended to and did not mean anything to that portion of the public using the highway on foot or by private conveyance. Such warning bells are not required or customary at ordinary highway crossings and when installed are inevitably a notice to the general public that the ordinary means of warning at a highway crossing are inadequate for that particular place, which would naturally tend to divert the vigilance of those regularly using the highway from the ordinary methods of warning. This bell had been maintained by defendant at the crossing where the accident occurred for several years. How it came to be installed, the manner in which it operated, the extent to which it was kept in working order, deceased's knowledge of its condition and the extent to which he in the exercise of reasonable caution and prudence might and did rely upon it were, under the *Tobias Case*, questions for the jury."

In the instant case the testimony was very conflicting. Of the 19 written requests preferred by counsel for defendant, 14 were given. We have already seen that the trial judge gave a very long, general charge in which he attempted to cover every phase of the case. The parties had able counsel and the case was carefully tried. We find no reversible error.

The judgment is affirmed, with costs to the plaintiff.

BIRD, C. J., and OSTRANDER, STEERE, BROOKE, FELLOWS, STONE, and KUHN, JJ., concurred.