McPEAKE *v.* GRAND TRUNK WESTERN RAILWAY CO.

1. ACTION — ASSIGNMENT OF CLAIM — JOINDER OF ASSIGNOR AND
   ASSIGNEE IMPROPER—SPLITTING CAUSE OF ACTION.

   There was an improper joinder of the owner of an auto-
   mobile and an insurance company as plaintiffs, in an action
   against a railroad company for damages to the automobile
   caused by defendant's train, where the owner had assigned
   to the insurance company his claim therefor to the extent
   of the payment made to him by the insurance company,
   since the cause of action could not be split.

2. APPEAL AND ERROR—IMPROPER JOINDER NOT FATAL WHERE IM-
   PROPER PARTY DROPPED.

   An improper joinder of parties plaintiff was not fatal,
   under 3 Comp. Laws 1915, §· 12364, where the improper
   party, after giving his testimony, was dropped as plaintiff.

3. RAILROADS — NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—QUESTION
   FOR JURY.

   In an action against a railroad company for damages
   caused to an automobile by a train claimed to have been
   backing over a crossing in the nighttime without lights,
   the question of the driver's contributory negligence, *held*,
   under the evidence, a question of fact for the jury.

4. SAME—CARE REQUIRED WHERE AUTOMATIC SIGNAL SILENT IS
   THAT OF ORDINARY PERSON UNDER THE CIRCUMSTANCES.

   While a traveler approaching a railroad crossing at which
   he knows an automatic signal is maintained is entitled
   to place some reliance upon the indication of safety which
   silence of the signal implies, he is nevertheless bound to
   use such care, in addition, as an ordinarily prudent person
   would use under such circumstances.

5. SAME—CONTRIBUTORY NEGLIGENCE QUESTION FOR JURY.

   Whether the driver of an automobile, approaching a rail-
   road crossing at which the automatic signal, of which he
   had notice, was silent, was guilty of contributory negligence
   in proceeding to cross without stopping, although he claims

[1]Assets, 5 C. J. §§ 60, 204; [2]Appeal and Error, 4 C. J. § 2898;
[3]Railroads, 33 Cyc. 1111; [4]Id., 33 Cyc. 1029; [5]Id., 33 Cyc. 1126;
21 L. R. A. (N. S.) 794; 29 L. R. A. (N. S.) 924; 46 L. R. A.
(N. S.) 702, 706; 2 R. C. L. 1206; 1 R. C. L. Supp. 734, 743.

to have made observation and taken the precaution of an ordinarily prudent person, *held*, a question for the jury.

6. SAME—EVIDENCE—RES GESTÆ.

Statements by the local agent of the railroad company that the warning lights at the crossing wouldn't work when the cars were switching, made after the accident happened, were not admissible as part of the *res gestæ*.

7. APPEAL AND ERROR—ADMITTING INCOMPETENT TESTIMONY—ERROR NOT CURED BY INSTRUCTION.

Error in admitting incompetent testimony bearing directly upon an important issue left to the jury, where it did not come in casually, but was insistently presented, was not cured by the emphatic instruction of the trial judge to leave such testimony out of consideration.

Error to Livingston; Collins (Joseph H.), J. Submitted April 19, 1928. (Docket No. 34.) Decided June 4, 1928.

Case by Frank E. McPeake and the Citizens Mutual Automobile Insurance Company against the Grand Trunk Western Railway Company for damages to an automobile. Judgment for plaintiff insurance company. Defendant brings error. Reversed.

*H. R. Martin* (*Leo J. Carrigan,* of counsel), for appellant.

*Don W. Van Winkle,* for appellee.

WIEST, J. Plaintiff Frank E. McPeake owned an automobile insured by plaintiff company, and, the evening of November 8, 1925, while attempting to cross defendant's railroad tracks, in the city of Charlotte, the automobile was struck and damaged by a train backing over the crossing. The automobile was repaired at an expense of $643.12, the repair bill paid by the insurance company, and an assignment of

⁶Evidence, 22 C. J. § 442; ⁷Appeal and Error, 4 C. J. § 2973.

McPeake's right of action against defendant taken by that company. This suit was then brought by McPeake and the insurance company to recover the damage to the automobile. During the trial McPeake was dropped as plaintiff, and judgment was rendered in favor of the insurance company for $643.12. Defendant reviews by writ of error.

Defendant claims there was an improper joinder of plaintiffs. The assignment to the insurance company stated that it was to the extent of the payment made by the company to McPeake. There was an improper joinder of parties plaintiff. The cause of action could not be split. The suit should have been dismissed as to plaintiff McPeake when it appeared that he had assigned his right of action (*Heck* v. *Henne*, 238 Mich. 198), and, as such fact was stated in the declaration, defendant was entitled to such an order at once, upon request. The request was made early in the trial and denied, and McPeake gave his direct testimony as a plaintiff, but, at the close thereof, he was dropped. His improper joinder was not fatal. 3 Comp. Laws 1915, § 12364.

It is claimed that:

"The driver of the automobile under the undisputed evidence, viewing it in the light most favorable to him, was guilty of contributory negligence as a matter of law and the trial judge should have directed a verdict in defendant's favor."

Counsel for defendant insist that this case falls within the line of cases where the undisputed physical facts, established by the driver's testimony, demonstrates that had he looked with the slightest degree of care he could not have failed to see the approaching car or train. We think the evidence presented an issue of fact for the jury. *Miller* v. *Railway Co.*, 234 Mich. 184.

A so-called flash-light warning signal was maintained

by defendant company at the crossing, but claimed by plaintiff to have been out of order that night or not working, and the train was backed across the street without any precaution to warn persons upon the highway. McPeake was familiar with this crossing and aware of the flash-light, and claimed there was no signal by flash-light, and he looked and saw no train approaching.

The circuit judge instructed the jury:

"So if you should find that McPeake knew that the defendant maintained this danger signal there to give warning of the approach of its train, and you find McPeake knew of this signal as I said, and you find that it did not work upon this occasion, that is, give the usual signal, on the approach of its train, then these facts may be taken into consideration by you, together with all the other facts in the case, as well as the other circumstances that have been disclosed by the evidence, in determining whether McPeake was guilty of contributory negligence in approaching·the track in the manner that he did, or whether he was not."

The effect of no warning by a signaling device at a railroad crossing has lately received exhaustive consideration in *Crowley* v. *Railroad Co.*, —— Iowa, —— (213 N. W. 403) ; reported with copious annotation in 53 A. L. R. 964. We quote from the syllabus given in A. L. R.:

"The presence and silence of an automatic signaling device at a railroad crossing do not generally relieve one approaching the crossing from the duty of exercising due care."

The Iowa court also stated:

"Some cases hold that the fact that an automatic signal gives no warning of an approaching train is a circumstance to be considered on the question of the traveler's exercise of due care, and that the question, in such case, becomes one of fact to be determined by

the jury;" citing, among other cases, *Tobias* v. *Railroad Co.*, 103 Mich. 330.

We think the governing rule well stated in *Baltimore & Ohio R. Co.* v. *Windsor*, 146 Md. 429 (126 Atl. 119). In that case the driver of an auto truck was struck by a train at a crossing where an automatic bell failed to ring, and the driver, partly relying on the bell, also slowed up and looked and listened as an added precaution. In holding the question of contributory negligence was one of fact for the jury, the Maryland court said:

"And so the question is directly presented, must the rule, which has been so often announced in cases where a silent crossing bell was not involved, that it is the duty of one at a railroad crossing to continue to look and listen until he has passed the point of danger, and that if he fails to do so he is guilty of contributory negligence as a matter of law, be strictly applied in *all* cases, even where the failure of an automatic crossing bell to ring may have induced the traveller to exercise something less than the extreme care required in ordinary cases?

"In L. R. A. 1916D, at page 788, it is said:

" 'It is difficult to deduce from the cases any definite rule as to the extent to which a traveler on a highway may rely upon automatic safety devices placed at railroad crossings for his protection. The cases seem to agree that the presence of such devices at a crossing may properly be regarded as having some effect upon the care required of a highway traveler, but some of the cases, while apparently recognizing this principle, require such additional precautions upon the part of the traveler when considering a concrete example, that there seems to be no practical difference between the care required when an automatic device is present and that required when no such device is maintained.

" 'About all that may be said is that a traveler approaching a crossing at which he knows an automatic signal is maintained, while entitled to place some reliance upon the indication of safety which silence of the signal implies, is nevertheless bound to use such care in addition as an ordinarily prudent man would use under such circumstances.'

"See, also, note to *Jacobs* v. *Railway Co.,* Ann. Cas. 1918D, at page 389; 33 Cyc. p. 1028.

"An examination of the cases cited in the above mentioned notes will verify the accuracy of the conclusion of the authors. While there is much conflict in the authorities, the last clause quoted seems to be supported by the best considered cases; and we take it to mean that the degree of care, required of one approaching a crossing, when an automatic bell of which he has knowledge is silent, is only that which an ordinarily prudent man would use under *such circumstances,* and not the extreme care that would be required if there were no device there to indicate safety; and that whether proper care has been exercised under *such circumstances* is ordinarily a jury question."

Counsel insist the case at bar falls within the rule requiring one to stop before attempting to cross a railroad track, citing *Davis* v. *Railway Co.,* 241 Mich. 166. If view of the tracks is obstructed, and, therefore, not open to observation for a distance reasonably sufficient to discover an approaching train in time to avoid risk, then the rule in the *Davis Case* applies, but if the view is open, then, even if the one approaching on the highway does not stop but claims to have made observation and have taken the precautions of an ordinarily prudent person, the question is one of fact for the jury. We think the evidence presented a question for the jury under the last-mentioned rule.

After the accident the local agent of defendant company appeared at the scene, and, against strenuous objection, testimony was admitted that he then said: "When the cars were switching the lights wouldn't work," and "He said the lights didn't work on reverse traffic." This was admitted on the theory of *res gestæ,* because said within a few minutes after the accident. It was *after* the accident, was not *res gestæ,* and extremely prejudicial because the driver of the automobile, and one riding with him, had testified that there was no warning light. While this testimony was ad-

mitted by the court, and should have been excluded, it is claimed by counsel for plaintiff that the error was cured by the court at the close of plaintiff's case, and in the instruction to the jury. The court emphatically directed the jury to leave such testimony out of consideration. This testimony was erroneously admitted and bore directly upon the circumstances left to the jury in connection with the care exercised by McPeake. We are persuaded that the effect of such testimony was to leave an ineradicable impression upon the minds of the jurors and the subsequent effort by the court to cure the error cannot be said to have freed the case from the effect thereof.

As stated by Mr. Chief Justice FEAD in *Burns* v. *Kieley's Estate, ante,* 668: "The testimony did not come in casually. It was insistently presented." Counsel for defendant, by repeated objection, endeavored to keep the testimony out, and counsel for plaintiff insistently urged its admissibility and was sustained by the court.

For the mentioned error, the judgment is reversed, and a new trial granted, with costs to defendant.

FEAD, C. J., and NORTH, FELLOWS, CLARK, McDONALD, POTTER, and SHARPE, JJ., concurred.