DAY *v.* PERE MARQUETTE RAILWAY CO.

1. APPEAL AND ERROR—DIRECTED VERDICT.
   In reviewing judgment for defendant on directed verdict, testimony must be construed in light most favorable to plaintiff.

2. RAILROADS—NEGLIGENCE—CONTRIBUTORY NEGLIGENCE.
   In action against railroad company for death of plaintiff's decedent in crossing accident, defendant's negligence and decedent's contributory negligence, *held,* questions for jury on record.

3. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—DIRECTED VERDICT.
   Question of contributory negligence may be determined as matter of law only when circumstances are such that all reasonable minds would reach same conclusion.

Error to Gratiot; Searl (Kelly S.), J. Submitted October 17, 1930. (Docket No. 100, Calendar No. 35,127.) Decided December 2, 1930.

Case by Flora E. Day, administratrix of the estate of John N. Day, deceased, against the Pere Marquette Railway Company, a Michigan corporation, for the death of John N. Day at a railroad crossing. From directed verdict and judgment for defendant, plaintiff brings error. Reversed and remanded.

*Barstow & Barstow* and *D. G. F. Warner,* for plaintiff.

*Mathews & Greene (W. K. Williams* and *John C. Shields,* of counsel), for defendant.

NORTH, J. This is a crossing accident case, and the question for review is presented by an order of

the trial judge wherein he directed a verdict for the defendant at the close of proofs on the ground that plaintiff's decedent was guilty of contributory negligence.

The accident involved occurred at the point where defendant's track crosses West Superior street in the city of Alma, Michigan. This is a paved street extending in an easterly and westerly direction, and defendant's track at this point extends in a northwesterly and southeasterly direction. Immediately adjacent to defendant's track and on the easterly side thereof is the track of the Ann Arbor Railroad Company. The distance between the tracks of these two companies from center to center is 14 feet. The deceased, Dr. Day, was a practicing physician. In the forenoon on the day of the accident he was traveling easterly in his automobile on Superior street. As he approached within 5 or 10 feet of defendant's track he stopped his car and waited until a north-bound freight train on the Ann Arbor track had passed. There was a flagman at the crossing. As soon as the freight train had cleared two automobiles which had been waiting on the easterly side and pedestrians on the sidewalk proceeded to cross the tracks. Just at this time a regularly scheduled passenger train on defendant's road was approaching from the north. After flagging the freight and while it was passing, the flagman went over and stood on or near the northerly street curb. Here he was within a few feet of the defendant's track, was talking to pedestrians standing on the sidewalk, and was not displaying the stop sign which he held in his hand. He saw the approaching passenger train, warned at least one of the pedestrians, but told her she had time to cross. Vehicles approaching from the east were attempting to cross, their view towards

the approaching passenger train at that time being obstructed by the freight train that had just passed. The flagman stopped the west-bound automobile traffic and caused one vehicle to back off the Ann Arbor track. In the meantime Dr. Day started to cross defendant's track. The flagman called to him and made motions to stop, but the doctor proceeded until the front wheels of his automobile were on defendant's track. Here his machine paused a moment, then started suddenly ahead, and just at this instant the collision occurred. Dr. Day was seriously injured and died three days later. Plaintiff, as the administratrix of his estate, brought this action to recover damages.

As to defendant's negligence, the record admittedly presents an issue of fact. As bearing upon decedent's contributory negligence, there is evidence that before proceeding Dr. Day did not look to the north from which direction defendant's passenger train was approaching. If, as there is testimony to show, Dr. Day was between 5 and 10 feet west of defendant's west rail while waiting for the freight to pass, he could have seen defendant's approaching passenger train at least 193 feet. From photographic exhibits, it conclusively appears that from a position a little further west and more remote from defendant's track Dr. Day's view of the on-coming train would have been very materially obstructed by the flagman's house, which is located between the curb and walk and 8 feet west of the Pere Marquette track. There were bushes and trees which to some extent might have obstructed the view of one approaching this crossing from the west in an automobile. These obstructions, however, are of little importance if, as stated in plaintiff's brief, Dr. Day stopped his automobile 6 or 8 feet west of defend-

ant's track. On the oral argument, plaintiff's counsel admitted that warning was given by the ringing of the bell of defendant's locomotive and sounding of the crossing whistle. This was a regularly scheduled train running on time; and the general surrounding conditions and the fact that the defendant operated such a train were well within the knowledge of decedent, who for years had lived in the immediate vicinity of the crossing. As above noted, the accident happened in the daytime.

If the record closed here, there might be much force to defendant's claim of right to a directed verdict. But there is testimony which presents an issue of fact as to whether the flagman was negligent in the discharge of his duties and as to whether his conduct at the time might have been construed by Dr. Day as an invitation to cross. One witness testified:

"*Q.* Where was the watchman at the time Dr. Day drove upon the tracks?

"*A.* He had left the center of the road and he was off to the side of the road. As I remember it, I would say the watchman was standing near his shanty and talking to another man. * * * On the north side (of the street). * * *

"*Q.* He was there when you first observed him?
"*A.* Yes.
"*Q.* And Doctor Day had driven on to the track?
"*A.* He was driving on. * * *
"*Q.* Where was Doctor Day at the time?
"*A.* I would not say definitely that the car was in motion or not, but at least part of the car was on the railroad track. * * *
"*Q.* Where was his car at the time the watchman went back and waved his signal?
"*A.* Part of it at least was on the track."

There is other testimony of like character. On the issue now before us, this testimony must be construed in the light most favorable to plaintiff. If the flagman's conduct in leaving the part of the street used by passing vehicles at a time when defendant's passenger train was approaching and immediately after he had flagged the traffic for the freight train might indicate to a reasonably careful driver that the crossing was clear for his safe passage, it cannot be said that the minds of all reasonable men would agree in holding that Dr. Day was not justified in accepting such conduct as an invitation by the flagman to proceed across defendant's track.

"The rule has been repeatedly laid down by this court that the question of contributory negligence can be determined as matter of law only when the circumstances are such that all reasonable minds would reach the same conclusion." *Amedeo* v. *Railway Co.*, 215 Mich. 37.

We do not here hold that an accident at a so-called "protected crossing" always presents a question of fact on the issue of contributory negligence. Each case must depend upon its own circumstances. But in the instant case we find there is testimony which presents such an issue for determination by the jury. The judgment of the lower court is reversed, and the case remanded for a new trial, with costs of this court to appellant.

WIEST, C. J., and BUTZEL, CLARK, McDONALD, POTTER, SHARPE, and FEAD, JJ., concurred.