MOTYKA v. DETROIT, GRAND HAVEN & MILWAUKEE RAILWAY CO.

MIECZNIK v. SAME.

KULESZA v. SAME.

1. APPEAL AND ERROR—DIRECTED VERDICT.
  In reviewing judgment *non obstante veredicto* for defendant, evidence must be viewed in light most favorable to plaintiffs.

2. RAILROADS—CROSSING   ACCIDENT—CONTRIBUTORY   NEGLIGENCE—PROTECTED CROSSING.
  Where pedestrians were killed by train on crossing protected by watchman, other considerations respecting their contributory negligence must obtain than at ordinary crossing.

3. SAME—CONTRIBUTORY NEGLIGENCE.
  Since pedestrians killed by railroad train on crossing protected by watchman were only bound to exercise care and caution which an ordinarily prudent person would have exercised in

As to duty of railroad company to maintain flagman at crossing, see annotation in 16 A. L. R. 1273.

Care required of traveler going on crossing when gates are open, see annotation in 4 L. R. A. (N. S.) 521; L. R. A. 1916E, 821.

same or similar circumstances, on question of their contributory negligence regard must be had for circumstances of particular occasion.

4. SAME—PEDESTRIAN MAY PLACE SOME RELIANCE ON CROSSING WATCHMAN.

While pedestrian may not rely wholly on flagman, gates, or bell at railroad crossing, but must take precaution for his own safety, he may place some reliance on such protection.

5. SAME—ABSENCE OF WATCHMAN—CONTRIBUTORY NEGLIGENCE— QUESTION FOR JURY.

Whether absence of watchman from protected railroad crossing and lack of signal from him might indicate to reasonably prudent person that crossing was clear for safe passage— whether conduct of watchman was invitation to proceed—*held*, under circumstances of particular case, question for jury.

6. SAME—PROTECTED CROSSING—CONTRIBUTORY NEGLIGENCE—DIRECTED VERDICT.

Pedestrians killed at railroad crossing protected by watchman were not guilty of contributory negligence as matter of law, where evidence shows that, when they started to cross, street was clear and watchman was not in view to give warning, although they failed to look in direction from which train was coming, and, had they looked, accident might have been avoided.

BUTZEL, C. J., and WIEST and NORTH, JJ., dissenting.

Error to Wayne; Brennan (Vincent M.), J. Submitted January 6, 1931. (Docket Nos. 3, 4, 5, Calendar Nos. 35,082, 35,083, 35,084.) Decided April 7, 1931. Rehearing granted June 1, 1931.

Separate actions of case by Thomas Motyka, administrator of the estate of John Motyka, deceased, Mary Miecznik, administratrix of the estate of Casimir Krzewinski, deceased, and Maryanna Kulesza, administratrix of the estate of Stanislaw Kulesza, deceased, against the Detroit, Grand Haven & Milwaukee Railway Company, a Michigan

corporation, and another for personal injuries received in the same accident at a railroad crossing and resulting in the death of plaintiffs' decedents were tried jointly.

Judgments for defendants *non obstante veredicto*. Plaintiffs bring error. Reversed, and judgments ordered entered on verdicts.

*Arthur A. Koscinski* and *Robert J. Wojcinski*, for plaintiffs.

*Frederic T. Harward* and *Frederick V. Slocum*, for defendants.

Clark, J. In each of these three consolidated cases, plaintiff's decedent was a boy about 18 years of age. On March 17, 1924, near eight o'clock in the morning of a clear day, the three boys, walking abreast on Harper avenue in Detroit and passing on the crossing of defendant's railway tracks with Harper avenue, were run over by a backing locomotive. One boy was killed instantly; one survived several hours; and the other, it was found, also survived for a short time.

In one case there was recovery under the death act, and in the other cases, it appears, under the survival act. Each of the three verdicts is a substantial sum. On decision of a reserved motion to direct verdicts, the trial judge ordered judgments for defendant. The plaintiffs bring error.

Judgments on the verdicts were denied on the ground of contributory negligence of the boys. The error assigned is on the order of judgments for defendant. Defendant assigns no error.

There is evidence of negligence of defendant, and this calls for no discussion.

Were the boys guilty of contributory negligence as a matter of law?

Pertinent facts are thus well stated by the trial judge:

"Harper avenue runs east and west; defendant's right of way runs north and south. There are four railway tracks which cross Harper avenue. The westerly track is known as siding 11. The other tracks in order, proceeding easterly, are known as the inbound main track, the outbound main track and the long siding. Several hundred feet north of Harper avenue the main tracks curve to the west. West of siding 11, and north of Harper avenue, and running parallel to the other four tracks, there are also two stub tracks which end at the sidewalk just north of Harper avenue. According to plaintiffs' witness, railway boxcars were standing upon these stub tracks, and also upon siding 11, north of the northerly sidewalk of Harper avenue, and within a foot or two of the same, obstructing the view, north, of the inbound main track, plaintiffs' principal witness testified also that there was a locomotive operating on siding 11 just south of Harper avenue, and that its bell was ringing just preceding the accident. All witnesses agree that immediately preceding the accident, a locomotive, with bell ringing, and train of cars proceeded north on the outbound main track, crossing the intersection a moment or two before the accident. The accident occurred during the daylight hours.

"As stated, the three decedents were walking easterly upon the sidewalk upon the north side of Harper avenue across the railway tracks. They proceeded to the center of siding 11 where they stopped and looked south. At that point the train going north on the outbound main track went by.

The three decedents, walking together, then started across the inbound main track. A few feet behind them was Alfred Wolinski, plaintiffs' principal witness, who saw the accident and described its happening. He testified that the three lads, after stopping in the center of siding 11 and looking south, proceeded to cross the next track (the inbound main), without looking north, and that they were struck and killed by a locomotive and tender coming from the north and running backwards in a southerly direction on the inbound main track. Wolinski also testified that the watchman or flagman required to be in attendance by virtue of an order of the Michigan railroad commission was not in evidence at the crossing just prior to the accident."

The protection of the crossing was by order of the Michigan railroad commission, made January 19, 1916, that a watchman be stationed by defendant at the crossing 24 hours of each and every day to warn the public of approaching engines and trains. There was a watchman's shanty at the crossing.

Plaintiffs' principal witness testified that at the moment in question his vision was clear and unobstructed, he could "see on Harper avenue across the tracks," and that he saw no watchman or flagman. He started across just behind the boys and barely escaped being killed. He gave further testimony, over objection, the competency of which is not here questioned, that, immediately after the accident, the watchman made statements from which it might be inferred that he was not on the crossing at the moment in question.

So there is some evidence that the watchman was not at the moment on the crossing. There is evidence that he was there just before the accident and soon thereafter. On the question before us,

the decision of the reserved motion of defendant to direct, evidence must be viewed in the light most favorable to plaintiffs.

There was a small but sufficient safety zone from which the boys, had they looked to the north, could have seen the backing locomotive approaching on the inbound main and thus avoided injury. This fact, if this were an ordinary crossing case, might require affirmance of a holding of contributory negligence, but this was a protected crossing, and other considerations respecting negligence must obtain.

It is settled law that it was upon the boys to exercise the care and caution which an ordinarily prudent person would have exercised in the same or similar circumstances, and from this it follows that regard must be had for the circumstances of the particular occasion. 45 C. J. p. 951.

The evidence here reviewed is that, when the boys, after stopping to look, started across the tracks, the street was clear and the watchman stationed there was not out to warn of the approach of the locomotive.

Granting that one may not rely wholly on flagman, gates, or bell, but must take precaution for his own safety, he may place some reliance on such protection afforded at a crossing. We think it was for the jury to say whether the absence of the watchman and the lack of any signal from him might indicate to a reasonably prudent person that the crossing was clear for safe passage, whether the conduct of the watchman was an invitation to proceed. This view has obtained in case of a pedestrian (*Amedeo* v. *Railway Co.*, 215 Mich. 37), as in other cases.

See *Day* v. *Railway Co.*, 252 Mich. 589; *Tobias* v. *Railway Co.*, 103 Mich. 330; *Hudson* v. *Railway Co.*,

227 Mich. 1 (23 N. C. C. A. 682); *Richmond* v. *Railway Co.*, 87 Mich. 374; *Crawford* v. *Railway Co.*, 207 Mich. 159; note 53 A. L. R. 973; note 23 N. C. C. A. 682; note 16 N. C. C. A. 110, 112.

Under the circumstances of the case, it ought not to be held as a matter of law that the boys were negligent in not looking more carefully before attempting to cross. The trial judge was right in submitting to the jury the question of contributory negligence.

Judgments reversed. Costs to appellants.

Causes remanded for judgments on the verdicts.

McDONALD, POTTER, SHARPE, and FEAD, JJ., concurred with CLARK, J.

WIEST, J. (*dissenting*). I cannot concur in the opinion of Mr. Justice CLARK. Under the evidence introduced by plaintiffs the young men were guilty of contributory negligence, and the judgments, notwithstanding the verdicts, should be affirmed.

An eyewitness, and the only person who saw the accident and who was walking immediately behind the young men, was called by plaintiffs and testified that, before the young men stepped on the track, they did not look in the direction of the oncoming cars. Opportunity to have observed the approaching cars in time to keep off the track was open to them, and the absence of the crossing flagman, whether noticed by them or not, did not relieve them from the duty of exercising the ordinary precaution of looking before stepping into a place which was a warning, in and of itself, of possible danger. It has long been held that a railroad track warns of danger, and ordinary care requires one about to cross to, at least, take a look. The evidence dis-

closes no circumstances so diverting the attention of the young men as to excuse them from not looking for the approach of the train. A switch engine was upon another track but not approaching the crossing.

What was said by this court in *Gardner* v. *Railroad Co.*, 97 Mich. 240, is applicable here:

"If the plaintiff's attention was diverted by the switch engine, as he claims, it is no excuse for not looking for the approach of a train. He was to pass a dangerous point. He knew there was danger there. He was bound to exercise that degree of care that the situation and surroundings demanded of a prudent and careful person. If the switch engine was making a noise by its bell and by letting off steam, it, at least, was not an obstruction to his view to the east, and it is not so claimed. If he had looked eastward, he would have seen the train before he stepped upon the track. The ringing of the bell and the blowing off of steam from the switch engine did not relieve him from the duty of looking in the other direction. One look eastward, and one less step taken, and he would not have been upon the track. Upon any theory of the case, it was the duty of the court to direct the verdict in favor of the defendant."

I do not find the cases cited by my Brother decisive of the question here involved. Such cases either recognize or are not in conflict with the rule of care laid down in the cases I shall cite.

The circuit court relied, and rightly so, upon our holding in *Tree* v. *Railway Co.*, 238 Mich. 658. In that case the crossing watchman was absent, and we held that plaintiff, a truck driver, assumed the duty of crossing under his own supervision and was guilty of want of care barring recovery in not looking before driving upon the track. That case and

this are alike in principle of law, for the rule of care is the same for drivers of vehicles and for pedestrians.

In *Aiken* v. *Railroad Co.*, 130 Pa. 380 (18 Atl. 619, 17 Am. St. Rep. 775), a case very much like the one at bar, the trial judge instructed the jury:

" 'Ordinarily, the rule of law is * * * that a man before crossing a railroad track must stop, look, and listen. * * * I think that it is usually applied, however, to parties who are driving, and not to parties walking. It is after all not a rule of law, but a rule of evidence only, and therefore the duty of stopping is always a question for the jury.' "

Of this the supreme court said:

"This was clear error. The rule as to stopping applies equally to persons walking as to persons driving. There is no distinction, in the nature of things, except of degree as to danger, and none is recognized in the cases. * * * It is not a rule of evidence, but a rule of law, peremptory, absolute and unbending; and the jury can never be permitted to ignore it, to evade it, or to pare it away by distinctions and exceptions. That failure to stop is not merely evidence of negligence, but negligence *per se,* has been said so often, from *North Pennsylvania R. Co.* v. *Heileman,* 49 Pa. 60 (88 Am. Dec. 482), to *Greenwood* v. *Railroad Co.,* 124 Pa. 572 (17 Atl. 188, 3 L. R. A. 44, 10 Am. St. Rep. 614), that to cite the cases would be wearisome."

In *Tomes* v. *Railroad Co.,* 240 Mich. 133, a 14-year old school girl, at a railroad crossing, did not look and was struck by a train. Held there could be no recovery under the rule of law, *which is more than a mere rule of evidence.*

The following rule stated in *Phillips* v. *Railway Co.,* 111 Mich. 274 (66 Am. St. Rep. 392), has never

been departed from in this jurisdiction. It was there said:

"A person about to cross a railroad track is bound to recognize the danger, and to make use of the sense of hearing as well as of sight, * * * to ascertain, before attempting to cross, whether a train is in dangerous proximity; and if he neglects to do this, but ventures blindly upon the track, without any effort to ascertain whether a train is approaching, it must be at his own risk."

In *Guntermann* v. *Railroad Co.*, 168 Mich. 37, it was stated:

"There is no testimony that upon approaching the track plaintiff's decedent stopped, looked, and listened for the approaching train."

Held, negligence precluding recovery, and the verdict should have been directed for defendant under twelve Michigan cases cited.

If the young men knew that a flagman was stationed at the crossing and noted his absence, or that he was not flagging, then they were in no wise released from looking before crossing the track. The rule on this is stated with reference to gates, in *Koch* v. *Railway Co.*, 148 Cal. 677 (84 Pac. 176, 4 L. R. A. [N. S.] 521, 113 Am. St. Rep. 332, 7 Ann. Cas. 795):

"Nor is it the law that when a railroad company adopts safety gates or any other appliance for the protection of the public the public is thereby absolved from all duty of taking care of itself. A person is still required to exercise due and ordinary care, and while the *quantum* of care which will be reasonable may be less where the gates are provided and are relied upon by the traveler, still the gates themselves are not an assurance and a war-

ranty such as to justify a traveler in going blindly ahead in total disregard of all ordinary precautions."

There is no evidence that the young men knew of a flagman at this crossing or looked to a flagman for guidance. Even if the young men relied upon the absence of the flagman as indicative of safety in crossing there can be no recovery. Something more than that they so relied must be shown; for the absence of the flagman did not excuse them from looking and listening and taking thought for their own safety. *Ellis* v. *Railroad Co.,* 169 Mass. 600 (48 N. E. 839).

3 Elliott on Railroads (3d Ed.), § 1651, states:

"Nor does the absence of a flagman in any event absolve the traveler from the exercise of care."

In the case at bar there is no claim that the flagman signaled the young men to cross, for the claim is that the flagman was absent from his post and gave no signal.

In *Tiffin* v. *Railway Co.,* 78 Ark. 55 (93 S. W. 564), it was stated:

"Learned counsel insists that deceased might have been lulled into a feeling of security by the fact that a flagman was usually stationed at the crossing to warn travelers of approaching trains, and that under those circumstances it should have been left to the jury to say whether or not ordinary care required him to use his senses in discovering the approach of the train. We do not think so. It might have been different if he and the flagman had been standing in plain view of each other, so that he could reasonably expect warning from the latter of an approaching train. He could then have assumed that no train approached because no warn-

ing was given. But such is not the state of the case. He and the flagman were not in view of each other, and he was not misled by the inaction of the latter. He was about to occupy a position fraught with unusual danger, and it was his imperative duty to make use of his senses to discover the peril and avoid it.''

In *Hodgin* v. *Railway Co.*, 143 N. C. 93 (55 S. E. 413, 10 Ann. Cas. 417), the railroad had maintained a flagman to plaintiff's knowledge, and when plaintiff got near the railroad crossing he looked for the flagman but did not see him. In reply to the contention that, having looked for the usual watchman and seeing none, he had a right to cross the track and was absolved from the usual duty of looking and listening, the court said:

''The traveler who sees the watchman in his place has the right to rely on him for protection, but when he discovers that the watchman is absent from his post of duty, he is put on his guard at once, and must exercise ordinary care to protect himself from injury. He should himself then look and listen for passing trains. It is true the watchman is guilty of negligence when he deserts his post, but when this negligence was discovered by plaintiff it made it all the more incumbent upon him to look and listen for his own protection, for he had ample time to do so.''

See, also, *Smith* v. *Railroad Co.*, 141 Ind. 92 (40 N. E. 270); *Berry* v. *Railroad Co.*, 48 N. J. Law, 141 (4 Atl. 303).

Plaintiffs' sole testimony was that in broad daylight the three young men, side by side, without looking, walked onto the railroad track, immediately in front of a train, which they would have seen and avoided had they made the most casual observation,

and yet the jury awarded damages aggregating $51,000. It may be conceded that defendant was guilty of negligence in all particulars claimed. It is established by plaintiffs' proofs that the young men were also guilty of negligence *per se*. The verdict was contrary to the undisputed evidence, and the circuit judge could do no less than enter judgment for defendant.

Judgment should be affirmed, with costs to defendant.

Butzel, C. J., and North, J., concurred with Wiest, J.